THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* RUFO ROTGER, Defendant and Appellant.

No. 7689. Argued June 6, 1939.—Decided June 15, 1939.

*Francisco González Fagundo,* for appellant. *R. A. Gómez, Prosecuting Attorney* and *Luis Janer, Assistant Prosecuting Attorney,* for The People, appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the Court.

The District Court of Humacao sentenced appellant for the crime of abandonment of minors, consisting in that he "illegally, voluntarily and maliciously and with the intent to prejudice the life of his child, Mérida Pérez, of six years of age, had with the complainant, abandoned her and without any legal excuse did not comply with the obligations which the law imposes upon him of providing her with the necessary sustenance, clothes and the medical assistance."

The accused appealed to this Court and alleged the following errors as committed by the lower court:

"*First:* The district court committed error due to a violation of Section 263 of the Penal Code in force.

"*Second:* The district court committed error due to a violation of Section 125 of the Civil Code, 1930 edition.

"*Third:* The district court committed error due to a violation of Sections 249 and 250 of the Civil Code.

"*Fourth:* The district court committed error since the evidence presented is not sufficient to uphold the sentence."

In regard to the first three alleged errors, it is sufficient to refer to the cases of *People* v. *Rohena,* 52 P.R.R. 301 and *People* v. *López,* 54 P.R.R. 279, 285, in the latter of which it was said:

"There is no doubt that the word acknowledged as used by the legislator in regard to illegitimate children in criminal law—Section 263 of the Penal Code, 1937 ed.—did so unwittingly. But starting from the basis that they do exist, we believe that it means that the crime is only committed where a father, who is in a position to do so, fails to support his illegitimate issue whom he has held as such children publicly or privately, or because being his issue, he would have been bound to acknowledge them should they have been natural children. Thus, reasonably construing the provisions of the Civil Code—Section 129—in harmony with the amendment introduced by the Legislative Assembly to the penal law in 1931 (Act No. 36 of 1931, page 352), we are of the opinion that the criminal proceeding therein referred to can be the one rendered within the criminal action prosecuted for abandonment of minors as in the instant case.

"*If it is shown therein, beyond all reasonable doubt, that the minor was his son,* or had held him as such, and, consequently, that he should have acknowledged as such or had already acknowledged him, and that *in spite thereof, voluntarily and without any legal excuse had failed to comply with the duties imposed upon him by law to furnish the child with the required food, clothing, or medical assistance he should be found guilty even though the document referred to in the second paragraph or the judgment rendered in a civil action of which the first paragraph of Section 129 of the Civil Code so many times cited speaks, are not presented.*

"Within our present state of the law, the judgment rendered in a criminal prosecution of which said section speaks, can be no other than the one rendered in the criminal action for abandonment of minors where all the essential facts can be duly established. The duty of the father arises from the material fact that he is the father. Once it has been duly proved that he is the father, and that so being he failed to discharge his duties in the manner established by the criminal law, the crime should be understood to have been committed." (Italics supplied.)

██ Now then, was it proven beyond a reasonable doubt that the appellant knew that the minor, Mérida Pérez, was his daughter? The only evidence presented in regard to this question consisted of the testimony of the mother-complainant, from which it appears that she lived with the accused for about a year without being able to state exactly when she began to live with him. When asked how long before the birth of the child she lived with the accused, she answered:

"I must have lived with him."

The district attorney insisted asking the same question again and she then answered:

"About two or three mnoths before the child was born."

It does not appear from the testimony of this witness that the accused considered the girl as his child neither in public nor in private. Hence, the fact that he help her or attended her for two or three months and then left as the complainant testified, does not necessarily imply that in helping the child he did so moved by his relation of father and child.

Since it does not appear from the evidence that at the time the child was conceived the accused lived in concubinage with the complainant nor that he had had sexual contact with her within any determined date within the period of gestation, we must agree with the prosecuting attorney of this Court that the evidence does not show beyond a reason-

able doubt that the appellant is the father of the child. The testimony of the complainant is perfectly compatible with the existence of sexual relations initiated after the conception of the child. In our opinion, the fourth of the errors alleged, exists. Therefore, the judgment appealed from should be reversed.

Mr. Justice Wolf concurs in the result.